**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

PAMELA RIETZ,

    Plaintiff,

v.

ORACLE AMERICA, INC., a Delaware corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Pamela Rietz, by and through her attorneys, Sweeney & Bechtold, LLC, hereby submits her Complaint against the above-named Defendant as follows:

### INTRODUCTION

1. This is an employment discrimination suit brought by a current employee of Oracle America, Inc. ("Oracle") who was discriminated and retaliated against in violation of federal law. Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Plaintiff also asserts a claim against Oracle of outrageous conduct/intentional infliction of emotional distress.

### PARTIES

2. Plaintiff Pamela Rietz is a resident of the State of Colorado.

3. Defendant Oracle is a Delaware corporation authorized to do business in Colorado.

4.     Oracle's principal office is located at 500 Oracle Parkway Redwood Shores, California 94065.

5.     Oracle's registered agent in Colorado is located at 1560 Broadway, Suite 2090 in Denver, Colorado 80202.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that this action arises under federal law, specifically the Title VII and the ADEA.  The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

8.     At all relevant times, Defendant Oracle was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and 29 U.S.C. § 630(b) of the ADEA.

9.     The procedural prerequisites for the filing of this suit have been met.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a Notice of Right to Sue letter on June 2, 2016.

## SPECIFIC ALLEGATIONS

10.    Plaintiff is a female who, as of the date of this Complaint, is 53 years old.

11.    Plaintiff began her career with Oracle in May 1997 as a Curriculum Developer and was promoted to Senior Curriculum Developer/Manager, Group Manager Development, and then Director Development in 1997, 2000, and 2008, respectively.

12.    Oracle promoted Plaintiff to Senior Director Development in March 2014, a title that she maintains through the present.

13. In this role, Plaintiff has overseen a team of upwards of 66 employees throughout the world.

14. Throughout her employment, Plaintiff received "exceeds" or "outstanding" ratings on her annual evaluations.

15. Since approximately 2003, Plaintiff has reported directly to Liff Thomas, Vice President of Development.

### Plaintiff's complaint of sex and age discrimination against Jeff Caldwell

16. In early 2014, Jeff Caldwell became Oracle's Vice President of Product Development.

17. At that time, Caldwell became Thomas's direct supervisor.

18. In his capacity as Vice President of Product Development, Caldwell led meetings that Thomas and her direct reports, including Plaintiff, were required to attend.

19. During these meetings, Caldwell treated female employees and employees over 40 years old poorly, including raising his voice at, directing sarcastic and condescending comments towards, interrupting, and, at times, entirely ignoring these employees.

20. Caldwell did not treat male and younger employees in this same manner.

21. For example, on a conference call, Caldwell harshly questioned whether an older female Senior Director of Program Management understood how to use the basic components of PowerPoint in front of a number of her colleagues.

22. On another occasion, during a conference call, Caldwell angrily confronted Thomas for using a technical term that he claimed was no longer valid, yet Caldwell did not have a similar outburst when a male employee used the same term later during the call.

23. During several meetings with exclusively female attendees other than himself, Caldwell would start the meeting by announcing "rules" for the meeting, including that the attendees could only speak when spoken to and that they could only answer his questions with a yes or no.

24. Around March 2014, Plaintiff filed a complaint about Caldwell's discriminatory treatment of women and older employees with Thomas.

25. After Thomas failed to address Plaintiff's complaint, Plaintiff then complained to Oracle Senior Human Resources Business Partner, Lisa Hanson, around April 4, 2014 about Caldwell's behavior.

26. Hanson did not respond to Plaintiff's complaint until April 24.

27. In her initial response to Plaintiff's complaint about Caldwell, Hanson confirmed that Caldwell has a history of issues with women but that "this is the way he is."

28. Hanson told Plaintiff that Plaintiff should refrain from making references to sex or age discrimination in her complaints about Caldwell or Plaintiff would be disciplined.

29. Hanson failed to follow up with Plaintiff about Plaintiff's complaint, including whether Hanson conducted an investigation and, if so, the status or findings of that investigation.

30. After Plaintiff filed the complaint with Hanson, Caldwell's adverse behavior towards Plaintiff escalated.

31. For example, Caldwell refused to acknowledge Plaintiff in meetings and no longer gave her any assignments or additional responsibilities, despite the fact that Plaintiff had the largest and most productive team in Caldwell's organization.

32. Caldwell's discriminatory and retaliatory behavior towards Plaintiff continued up until she went on medical leave in March 2015.

33. Through Plaintiff's medical leave in March 2015, Plaintiff observed Caldwell's continued hostile treatment of other female and older employees.

34. When Plaintiff attempted to bring her continued concerns about Caldwell to Hanson's attention via e-mail, Hanson responded that Plaintiff should not complain about those issues in writing because any such e-mails could be subpoenaed.

35. Whenever Plaintiff attempted to discuss Caldwell's continuing discriminatory and retaliatory behavior or the status of Plaintiff's complaint with Hanson, Hanson refused to discuss it.

### Plaintiff's complaint of sex and age discrimination against Casey McGruder

36. As a part of Plaintiff's promotion in March 2014, she was assigned the management of a team of Oracle employees located in and around Bozeman and Butte, Montana.

37. Around September/October 2014, Rietz promoted Lonna Braverman to fill the Sales Cloud Team Manager position in Oracle's Bozeman, Montana office after a male employee resigned from Oracle.

38. As Sales Cloud Team Manager, Braverman reported directly to Plaintiff.

39. In her new manager role, Braverman had a number of direct reports, including Senior Technical Writer Casey McGruder.

40. Immediately upon reporting to Braverman, McGruder treated her and Plaintiff in a discriminatory manner, including:

   a. calling Braverman "just a woman" and "old" and expressing outrage that she was questioning his work;

   b. referring to Braverman and Plaintiff as "you old women";

5

    c. responding belligerently to Plaintiff and Braverman's questions about his performance, including why he was incurring nearly 10 hours of overtime per week that was neither pre-approved nor typical of his colleagues;

    d. screaming and yelling at Plaintiff and Braverman;

    e. saying that he hated Plaintiff and Braverman and did not believe anything that they said;

    f. stating that "the world would be a much better place if it was only run by men," "all you women are out to get me," and "you all are liars," referring to women;

    g. stating that he did not consider Plaintiff or Braverman to be "real persons";

    h. making threatening statements such as "I will 'take care' of you," "I will fight," "you will all get it," and that he would hurt Braverman, Plaintiff, and "Pam's minions"; and

    i. referring to Plaintiff, Braverman, and his other female colleagues as "fucking bitches."

41. McGruder treated neither his previous two male managers nor any of his male coworkers in this manner.

42. Both Plaintiff and Braverman complained to Hanson about McGruder's discriminatory, hostile, and threatening behavior, including their concern for their safety.

43. On one occasion, after a phone call with McGruder in which he was particularly hostile and described in detail how much he hated Braverman, including threatening that he "might just take a drive up there," referring to the Bozeman office where Braverman works, Plaintiff directed Braverman to work from home until Oracle mitigated the situation with McGruder.

44. When Braverman contacted Oracle security and asked if McGruder's access to Oracle's Bozeman office could be suspended because of a safety concern, Oracle security responded that such a directive would have to come from Oracle's Human Resources ("HR") department.

45. Plaintiff then discussed the situation with Hanson and asked that Hanson authorize temporarily rescinding McGruder's access to Oracle's Bozeman office. Hanson refused to support the request, claiming that McGruder did not pose a threat.

46. Plaintiff kept Thomas apprised of the situation, including McGruder's discriminatory treatment of her and her staff.

47. In response, Thomas advised Plaintiff to "stay away from things like this with HR," referring to Plaintiff's complaints about discrimination, because that is "how managers get into trouble." As an example, Thomas warned that Plaintiff could end up like a current Oracle employee who filed a sexual harassment complaint that "wasn't appreciated by management" and, as a result, the employee was still in the same job and had not been promoted.

48. Around November 16, 2014, Braverman requested that Plaintiff allow her to return to her old role because she could not tolerate the stress of managing McGruder.

49. Hanson told Plaintiff that Plaintiff should not have picked Braverman for the management position because Braverman was "too old" and "too tired," having returned from retirement to work at Oracle.

50. Thomas and Hansen refused to approve Plaintiff's suggestion for a replacement for the Sales Cloud Team Manager position because he was believed to be older than Plaintiff and maybe even Braverman.

51. After Plaintiff allowed Braverman to resume her old role, McGruder reported directly to Plaintiff. This continued to be the case until Plaintiff went out on medical leave in March 2015.

52. Through the time that Plaintiff went out on medical leave in March 2015, McGruder treated her and his female and older co-workers in the Bozeman office and Butte location with hostility.

53. During the same time, Plaintiff continued to complain to Hanson about McGruder's behavior.

54. In response, Hanson directed Plaintiff to "manage out" McGruder by "squeezing his head," i.e., making his work environment so unpleasant that he would resign. This included, but was not limited to, directing Plaintiff to: "not be nice" to McGruder, challenge him, reassign some of his work to other employees, contact him on a day when he was out sick, and deny him training, time off, and vacation, knowing that these actions would only exacerbate McGruder's hostility towards Plaintiff.

55. In addition, Hanson stated that she could block McGruder, and any other employee, from attempting to obtain another job or promotion at Oracle.

56. Plaintiff told Hanson that she was uncomfortable with this approach because, among other things, it was not effective and she believed it was illegal and would only make McGruder more hostile.

57. Hanson refused, however, to directly address, or allow Plaintiff to directly address, McGruder's insubordinate, hostile, and discriminatory behavior towards Plaintiff and other female and older employees–even though Hanson agreed that McGruder had "issues with

women" and that his behavior violated Oracle policy–and, instead, retaliated against Plaintiff for her continued complaints.

58. For example, Hanson:

   a. directed Plaintiff not to engage in discussions with Oracle's Bozeman office staff about their personal safety concerns related to McGruder;

   b. ignored Plaintiff's repeated complaints that McGruder posed a physical threat to Plaintiff and McGruder's other female co-workers in the Bozeman office and Butte location, including when McGruder told Plaintiff "I know where you live, I am a hunter, and I will shoot you," which prompted Plaintiff to remove her address from the company's directory;

   c. directed Plaintiff to assure the other Oracle Bozeman employees that McGruder was not a threat, which Plaintiff refused to do;

   d. became angry with Plaintiff after Plaintiff told Hanson that other Oracle employees in the Bozeman office were complaining about the hostile work environment and might file charges with the EEOC if Oracle continued to take no action to mitigate the situation with McGruder;

   e. assured Plaintiff that Hanson was consulting with Oracle's legal department and "external entities" about the issues with McGruder when this was not the case;

   f. told Plaintiff that McGruder could say whatever he wanted because of freedom of speech;

   g. refused to allow Plaintiff to put McGruder on a performance plan;

   h. blamed Plaintiff for the issues in the Bozeman office and Butte location; and

9

      i. ordered Plaintiff to approve McGruder's requests for overtime even though the overtime hours had not been preapproved as required by Oracle policy and Plaintiff and Hanson had reason to believe that McGruder had not actually worked those additional hours.

59. When Plaintiff repeatedly complained to Thomas about McGruder and Hanson's ineffectual handling of the situation, Thomas would tell Plaintiff that she was not supposed to discuss the issue with Plaintiff and directed Plaintiff to just "do what HR tells you, even if it's wrong."

60. Pursuant to Hanson's directive, Thomas also instructed Plaintiff to stop putting complaints about McGruder in writing.

61. Because of McGruder's behavior and Oracle's failure to address it, Plaintiff experienced considerable emotional distress with accompanying symptoms such as panic attacks, insomnia, nightmares, increased blood pressure, headaches, depression, anxiety, fear, nausea, weight loss, stomach pains and backache, irritability, and disruption of her work and family relationships.

62. Plaintiff also had preexisting medical issues that worsened because of her ongoing and increased workplace stress.

63. As a result, Plaintiff was compelled to go out on medical leave in late March 2015.

64. Plaintiff remains on medical leave as of the date of this Complaint.

65. Just prior to the start of Plaintiff's medical leave, she met with Hanson. During that meeting, Hanson told Plaintiff that Plaintiff's reporting structure would be different upon Plaintiff's return from medical leave.

66. When Plaintiff went out on medical leave, Hanson and Thomas moved half of Plaintiff's subordinates to another manager.

67. Around April 2015, an HR Employment Practices Consultant from Oracle, Michelle Nofer, contacted Plaintiff to discuss Plaintiff's complaints about Caldwell and McGruder and how they had been handled by Hanson and Oracle.

68. During phone conferences with Plaintiff in or around April and June 2015, Nofer:

   a. confirmed that Hanson and Oracle HR had not properly handled the investigations of Plaintiff's sex and age discrimination complaints, including by failing to escalate the complaints to Oracle's legal department;

   b. apologized on behalf of Oracle HR to Plaintiff for Hanson and Oracle's "mishandling" of the situation with Caldwell and McGruder;

   c. recognized that something had to be done with McGruder but that what Hanson had directed Plaintiff to do made the situation worse;

   d. stated that Hanson had lied when she claimed that Plaintiff was the cause of the issues with McGruder and the Butte location and Bozeman office;

   e. agreed that Plaintiff had reasons to fear further retaliation, especially from Hanson; and

   f. reported that she told Oracle that Hanson should not play any part in Plaintiff's return to work following the completion of Plaintiff's medical leave.

69. As of the date of this Complaint, Caldwell and McGruder are still employed by Oracle.

70. Plaintiff filed Charge of Discrimination number 846-2015-35778 in September 2015 with the EEOC in which she alleged that she was discriminated against based on her sex and/or age

and retaliated against for complaining about this unlawful discrimination in violation of Title VII and the ADEA.

71.     On June 2, 2016, the EEOC issued a Notice of Right to Sue in connection with Charge of Discrimination number 846-2015-35778.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

72.     The foregoing allegations are realleged and incorporated herein by reference.

73.     Oracle subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including but not limited to: treating Plaintiff and other women in a belligerent and condescending manner; ignoring Plaintiff during important work meetings; refusing to delegate assignments to Plaintiff or her team; failing to take action to remedy Caldwell or McGruder's discriminatory treatment of Plaintiff and other female employees despite Oracle's knowledge of this harassment; moving half of Plaintiff's subordinates to another manager; and compelling Plaintiff to go out on medical leave.

74.     Oracle's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

75.     Oracle's conduct discriminated against Plaintiff on the basis of her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

76.     As a direct and proximate result of Oracle's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

77.     The foregoing allegations are realleged and incorporated herein by reference.

78.     Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII.

79.     As a result of Plaintiff's protected opposition to discrimination, Oracle retaliated against her by subjecting her to less favorable terms and conditions of employment, as described in this Complaint, including, but not limited to: failing to investigate or otherwise address her complaints of sex discrimination against Caldwell and McGruder; ignoring Plaintiff and her employees' concerns about their physical safety; refusing to allow Plaintiff to address McGruder's performance issues while simultaneously pressuring Plaintiff to make McGruder's work environment so unpleasant that he would resign; threatening to discipline Plaintiff for complaining about discrimination and putting her discrimination complaints in writing; blaming Plaintiff for tumult in the Butte location and Bozeman office that was actually caused by McGruder and Oracle's failure to mitigate the situation; moving half of Plaintiff's subordinates to another manager; and compelling Plaintiff to go out on medical leave.

80.     Oracle's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

81.     Oracle's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

82.     As a direct and proximate result of Oracle's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### THIRD CLAIM FOR RELIEF
(Age Discrimination in violation of the Age Discrimination in Employment Act)

83. The foregoing allegations are realleged and incorporated herein by reference.

84. By virtue of her age, Plaintiff belongs to a protected group under the ADEA.

85. Oracle subjected Plaintiff to less favorable terms and conditions of her employment based on age as described in this Complaint, including but not limited to: treating Plaintiff and other older workers in a belligerent and condescending manner; ignoring Plaintiff during important work meetings; refusing to delegate assignments to Plaintiff or her team; failing to take action to remedy Caldwell or McGruder's discriminatory treatment of Plaintiff and other older employees despite Oracle's knowledge of this harassment; moving half of Plaintiff's subordinates to another manager; and compelling Plaintiff to go out on medical leave.

86. The discriminatory actions of Oracle were done knowingly and willfully, justifying an award of liquidated damages.

87. Oracle's conduct violated 29 U.S.C. § 623(a) of the ADEA.

88. As a direct and proximate result of Oracle's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### FOURTH CLAIM FOR RELIEF
(Retaliation in violation of the Age Discrimination in Employment Act)

89. The foregoing allegations are realleged and incorporated herein by reference.

90. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under the ADEA.

91.  As a result of Plaintiff's protected opposition to discrimination, Oracle retaliated against her by subjecting her to less favorable terms and conditions of employment, as described in this Complaint, including, but not limited to: failing to investigate or otherwise address her complaints of age discrimination against Caldwell and McGruder; ignoring Plaintiff and her employees' concerns about their physical safety; refusing to allow Plaintiff to address McGruder's performance issues while simultaneously pressuring Plaintiff to make McGruder's work environment so unpleasant that he would resign; threatening to discipline Plaintiff for complaining about discrimination and putting her discrimination complaints in writing; blaming Plaintiff for tumult in the Butte location and Bozeman office that was actually caused by McGruder and Oracle's failure to mitigate the situation; moving half of Plaintiff's subordinates to another manager; and compelling Plaintiff to go out on medical leave.

92.  Oracle's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

93.  Oracle's conduct violated 29 U.S.C. § 623(d) of the ADEA.

94.  As a direct and proximate result of Oracle's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FIFTH CLAIM FOR RELIEF**
(Outrageous Conduct/Intentional Infliction of Emotional Distress)

95.  The foregoing allegations are realleged and incorporated herein by reference.

96.     Defendant's course of conduct towards Plaintiff as described in this Complaint is so severe in degree that it goes beyond the bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

97.     Defendant's actions were extreme and outrageous and were done with the intent of causing Plaintiff severe emotional distress.

98.     Defendant's conduct was malicious, willful and/or wanton, and exhibited reckless or callous indifference to Plaintiff's protected rights.

99.     As a proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of pay, salary and benefits, emotional distress, inconvenience, mental anguish, and related injuries of a similar nature.

WHEREFORE, Plaintiff Pamela Rietz respectfully requests that this Court enter judgment in her favor and against Defendant Oracle and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Back pay and benefits;

C.     Injunctive and/or declaratory relief;

D.     Punitive damages and/or liquidated damages as allowed;

E.     Attorney fees and costs of the action, including expert witness fees, as appropriate;

F.     Pre-judgment and post-judgment interest at the highest lawful rate; and

G.     Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted August 31, 2016.

By:   s/Charlotte Sweeney

SWEENEY & BECHTOLD, LLC
650 S. Cherry St., Ste. 610
Denver, CO 80246
Telephone: (303) 865-3773
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
12476 W. 83rd Drive
Arvada, CO 80005

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

By:   s/Charlotte Sweeney

SWEENEY & BECHTOLD, LLC
650 S. Cherry St., Ste. 610
Denver, CO 80246
Telephone: (303) 865-3773
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF