IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02214-WYD-NYW

PAMELA RIETZ,

    Plaintiff,

v.

ORACLE AMERICA, INC., a Delaware corporation,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
AND ORDER**

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Oracle America, Inc.'s ("Oracle America") Motion to Compel Arbitration. [#25, filed January 9, 2017]. The Motion is before the court pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated December 2, 2016 [#12], and the memorandum dated January 10, 2017 [#26]. This court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the Motion to Compel Arbitration is GRANTED, and I respectfully RECOMMEND that the case be ADMINISTRATIVELY CLOSED pending completion of arbitration.

**BACKGROUND**

    Plaintiff Pamela Rietz ("Plainitff" or "Ms. Rietz") initiated this civil action on August 31, 2016, by filing a Complaint asserting claims for age and gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. and asserting one

claim for outrageous conduct/intentional infliction of emotional distress. [#1]. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a Notice of Right to Sue letter on June 2, 2016. [*Id.* at ¶ 9]. Plaintiff seeks monetary damages as well as injunctive and declaratory relief. Ms. Rietz is a resident of Colorado and is currently employed by Oracle America. [*Id.* at ¶¶ 2, 12]. Oracle America is a corporation incorporated under the laws of Delaware. [*Id.* at ¶ 3]. The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Oracle America filed an Answer to the Complaint on October 12, 2016. [#9]. This court held a Scheduling Conference and entered a Scheduling Order on December 14, 2016. [#16, #17]. On January 9, 2017, Oracle America filed the pending Motion to Compel Arbitration, asserting that Plaintiff signed an Employment Agreement when she began her employment with Oracle that contains an arbitration provision that applies to "any dispute arising out of or relating to [Plaintiff's] Oracle employment," and that the Employment Agreement controls the claims asserted in the Complaint. [#25 at 2]. The Employment Agreement, which Plaintiff entered into with Oracle Corporation in May 1997, reads in pertinent part as follows:

> If you and the company are unable informally to resolve any dispute arising out of or related to your Oracle employment, you agree that the company may elect, in its sole discretion and at any time, for the dispute to be mediated or submitted to final and binding arbitration… Arbitration is a process in which the parties submit their dispute to a neutral third party whose purpose is to decide the outcome and make a final and binding decision. By agreeing to this provision, you are giving up your right to have the dispute heard in a judicial forum and by a jury.

[#25-1 at 2].

On January 30, 2017, Plaintiff filed a Response to the Motion to Compel Arbitration [#31]; Oracle America filed a Reply on February 21, 2017 [#39]. After reviewing the briefing and the applicable case law, this court has determined that oral argument would not materially

assist in the resolution of the Motion.

## ANALYSIS

I.     **Applicable Law**

    A.     Applicability of 28 U.S.C. § 636(b)(1)

As a threshold matter, this court recognizes that the law in the Tenth Circuit is unsettled as to whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1).  *Compare Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1189 (D. Colo. 2013) (electing to assume that motion to compel was dispositive, giving consideration to the fact that the court would apply a de novo review to the magistrate judge's application of state contract law) *with Adetomiwa v. College*, No. 15-cv-01413-PAB-NYW, 2015 WL 9500787, at *1 (D. Colo. Dec. 31, 2015) (conducting *de novo* review of recommendation that motion to compel be granted, but suggesting that the motion was not dispositive and the court could apply a "clearly erroneous or contrary to law" standard of review).  Two courts of appeal have considered the issue and held that motions to compel arbitration are not dispositive. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) (holding that a motion to compel arbitration is not dispositive because a district court retains authority to dissolve stay or review arbitration award); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133 (3d Cir. 2014) (unpublished) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein.  Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation.").

This court construes a motion to compel arbitration as non-dispositive because the court retains jurisdiction throughout the arbitration proceeding, as reflected in *Cook v. PenSa, Inc.*, No.

3

13–cv–03282–RM–KMT, 2014 WL 3809409, at *6 (D. Colo. Aug. 1, 2014) (citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1140–41 (D. Colo. 2012)). Indeed, the Honorable Wiley Y. Daniel, the presiding judge, may ultimately confirm, modify, or vacate any arbitration award involving the Parties to this action. *See Vernon*, 857 F. Supp. 2d at 1141 (quoting *Jackman v. Jackman*, No. 06–1329–MLB–DWB, 2006 WL 3792109, at *1–2 (D. Kan. Dec. 21, 2006)). In addition, the District's own Local Rules suggest that a motion to compel arbitration is not dispositive. Local Rule 72.3 permits parties to consent to a Magistrate Judge to make a determination as to a dispositive motion, and a motion to compel arbitration is not included in the list of dispositive motions. *See* D.C.COLO.LCivR 72.3. Having resolved this preliminary issue, the court now turns to the question of arbitrability.

  B. <u>The Federal Arbitration Act</u>

The Federal Arbitration Act ("FAA") provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and section 4 authorizes a federal district court to compel arbitration for a dispute over which it would have jurisdiction. 9 U.S.C. §§ 3,4. However, as "arbitration is a matter of contract," the court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation omitted). Also, considering that arbitration is generally a matter of contract, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

In the instant case, Plaintiff disputes that Defendant can enforce the arbitration provision

4

contained in the Employment Agreement. Accordingly, this court will apply the two-step inquiry that governs the enforceability of an arbitration clause: (1) did the parties agree to arbitrate the dispute; and (2) if so, are there "legal constraints external to the parties' agreement [that] foreclose[ ] the arbitration of those claims." *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626 (1985).

An arbitration agreement is enforceable if there exists a valid agreement to arbitrate, and if the dispute falls within the scope of that agreement. *See, e.g., National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Manufactoring Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). Where the parties dispute whether an arbitration agreement exists, the party moving to compel arbitration bears a burden similar to what a movant for summary judgment faces. *Hancock v. Am. Tel. & Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012). If the moving party carries this burden, the burden shifts to the non-moving party to show a genuine issue of material fact about the formation of the agreement to arbitrate. *Id.*

## II.     The Employment Agreement

Oracle America contends that the Employment Agreement, and arbitration provision contained therein, controls Plaintiff's claims because the claims arise out of the alleged treatment she received during the scope of her employment. [#25 at 4]. Ms. Rietz does not contest the validity of the Employment Agreement or the arbitration provision, but argues that they comprise a contract between her and Oracle *Corporation*, and to which Defendant Oracle *America* is not a party. Plaintiff also argues that to the extent Oracle Corporation attempted to assign the

5

Employment Agreement to Defendant, that assignment is invalid because as a personal services agreement, it cannot be assigned without her consent, and the arbitration provision is illusory and therefore not enforceable under Colorado law.  [#31 at 2].

    A.     Timeliness

As an initial matter, Plaintiff suggests, though does not squarely argue, in her Response that the Motion to Compel Arbitration is untimely. *See* [#31 at 4].  Ms. Rietz asserts that during the seventeen months between when she filed the EEOC charge and Oracle America filed the Motion to Compel Arbitration, Oracle America had her personnel file and employment documents in its sole possession and failed to mention the arbitration provision in its response to the EEOC charge, in its Answer to Plaintiff's Complaint, or otherwise.  Oracle America replies that the arbitration demand is timely.

"[T]he right to arbitration, like any other contract right, can be waived." *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado,* 614 F.2d 698, 702 (10th Cir. 1980).  However, "[t]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case...." *Id.*  The following several factors guide a court's inquiry into whether a party has forfeited the right to arbitrate:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Hill v. Ricoh Americas Corp*, 603 F.3d 766, 772-73 (10th Cir. 2010) (quoting *Peterson v.*

*Shearson/American Express, Inc.,* 849 F.2d 464, 467–68 (10th Cir. 1988) (further citation omitted)). First, this court finds that Oracle America's actions in filing an Answer, which does not assert a counterclaim, and preparing the proposed scheduling order are not in and of themselves inconsistent with the right to arbitrate. Additionally, Oracle America filed the Motion to Compel Arbitration less than one month after this court entered the Scheduling Order, and represents that the Parties had not yet begun engaging in discovery. [#39 at 3]. At that time, the Parties had another seven months of discovery available to them. *See* [#17, #25]. Finally, Plaintiff does not assert that the seventeen-month delay between the filing of the EEOC charge and the Motion affected or misled her, or caused her prejudice; rather she contends the delay leads "one to conclude that Defendant itself does not believe that it is a party to the Employment Agreement." [#31 at 4]. *See Hill*, 603 F.3d at 775 ("The burden of persuasion lies with the party claiming that the right to demand arbitration has been waived"). Upon review of the circumstances of this case, this court does not find that Oracle America has improperly manipulated the judicial process by demanding arbitration after filing its Answer. *See id.* at 773-76 (holding defendant did not waive right to arbitration by participating in the court litigation for several months after answering the complaint). Accordingly, this court finds that the arbitration demand is timely.

      B.     <u>The Assignment</u>

Ms. Rietz argues that Oracle America cannot enforce the arbitration provision because it is not a party to the Employment Agreement. [#31 at 4]. Ms. Rietz also argues that to the extent Oracle America contends the Employment Agreement was assigned to it by Oracle Corporation, any such assignment is invalid. [*Id.* at 5]. As discussed below, I find that there was an assignment, and that the assignment is valid.

7

*Was there an Assignment?* In May 1997, Ms. Rietz entered into the Employment Agreement with Oracle Corporation. In its Reply, Oracle America asserts that Oracle Corporation is its predecessor and that a mere corporate name change "does not invalidate all of its prior employment agreements." [#39 at 2]. Ms. Rietz does not preemptively address this argument in her Response, but rather contends that Oracle America cannot enforce an agreement to which it is not a party. [#31 at 4-5]. Colorado courts have recognized that non-signatories to arbitration agreements, including successors-in-interest, may be bound by agreements to arbitrate under general contract law and agency principles. *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1100 (D. Colo. 2013), *aff'd in part, appeal dismissed in part*, 566 F. App'x 719 (10th Cir. 2014); *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007). Oracle America points to a copy of an email, dated February 18, 2005, informing "All US Oracle Employees" that, beginning March 1, 2005, they would become "employees of Oracle USA, Inc., a wholly-owned subsidiary of Oracle Corporation," and that the "terms and conditions of your employment with Oracle Corporation will be the same at Oracle USA." [#39-1 at 1]. The email specifically states that "[y]our Oracle Employment Agreement, including its provisions about arbitration…are being assigned to and remain in full force and effect with Oracle USA."[1] [*Id.*] Facing an almost identical scenario, a court in the Northern District of Illinois found, in an unpublished decision cited by both Parties, that the arbitration provision between the employee and Oracle Corporation was binding and enforceable despite a corporate name change. *Powell v. Oracle, USA*, Case No. 08 C 3740, 2008 WL 4833306, at *2, (N.D. Ill. Nov. 6, 2008) ("Oracle Corporation simply assigned its rights and obligations under the original contract to Oracle USA," noting, "[i]t is elementary that an assignment does not modify the terms of the underlying

---

[1] Defendant represents, and Plaintiff does not contest, that Oracle USA, Inc. was renamed Oracle

contract. It is a separate agreement between the assignor and the assignee, which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged") (quoting *Ametex Fabrics, Inc v. Just In Materials, Inc.* 140 F.3d 101, 107 (2d Cir. 1998)).  *See also Technology & Intellectual Property Strategies Group PC v. Insperity, Inc.,* Case No. 12–CV–03163–LHK, 2012 WL 6001098, at *6 (N.D. Cal. Nov. 29, 2012) (arbitration agreement was binding even though the party to the agreement changed its name).  Therefore, this court concludes that the Employment Agreement is subject to an assignment from Oracle Corporation to Oracle America.

*Is the Assignment Valid?*  Ms. Rietz contends that even if Oracle Corporation attempted to assign the Employment Agreement to Defendant, the assignment is invalid because Colorado law does not permit assignments of contracts for matters of personal trust or confidence, or for personal services.  Plaintiff acknowledges that an exception exists where the employee consents to the assignment, but asserts that she was never informed of the assignment between Oracle Corporation and Oracle America, and thus never had an opportunity to, and in fact did not, consent.  [#31 at 6].  Oracle America contends in its Reply that the matter of consent is a non-issue because the Employment Agreement is not a contract for personal services.  [#39 at 6].

The law generally favors the assignability of contractual rights.  *Scott v. Fox Bros. Enterprises, Inc.*, 667 P.2d 773, 774 (Colo. App. 1983).  *Accord Brown v. Gray,* 227 F.3d 1278, 1294 (10th Cir. 2000).  However, Colorado law "does not allow assignments for matters of personal trust or confidence, or for personal services," *Roberts v. Holland & Hart,* 857 P.2d 492, 495 (Colo. App. 1993), except where the employee consents to the assignment. *Phoenix Capital Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (citing *Matson v. White,* 122 Colo. 79, 84,

---

America, Inc. in 2010.  [#39 at 5 n.1, #39-2].

220 P.2d 864, 866 (1950)).  In *Scott v. Fox Bros. Enterprises*, the Colorado Court of Appeals, in holding that a real estate option contract was not personal in nature, and thus assignable, stated:

> The presumption [that contractual rights are assignable] may be overcome only if it can be shown that the optioner would not have granted it *but for his reliance upon the personal integrity, credit, or responsibility of the original optionee.* If that be shown to be the case, then the optionor has acted with that degree of trust and confidence which is *singularly personal* to the optionee/obligor, and the option is personal in nature and not assignable.

*Scott*, 667 P.2d at 774 (emphasis added).

As noted above, Plaintiff attests that she did not consent to the assignment of the Employment Agreement between Oracle Corporation and Oracle USA.  [#31-3].  Neither Party expounds on its respective position that the Employment Agreement is or is not a contract for personal services; and neither Party cites to any Colorado authority, and this court could find none, expressly addressing whether a contract for employment such as the one herein at issue qualifies as a contract for personal services, or whether an arbitration provision in a contract for employment is assignable.  Nonetheless, in applying the guidance articulated in *Scott* and considering analogous cases both within and outside of the state and Circuit, this court is persuaded that the Employment Agreement is not a contract for personal services.

First, the Employment Agreement contains no indication that Oracle Corporation hired Ms. Rietz based on an expectation that was singularly personal to her.  Indeed, the document is generic in nature, does not specify individuals, work to be performed, or duration of employment, and there is no suggestion that the parties involved contracted for personal taste, judgment, or skill with respect to the work required.  While axiomatic that an employer hires an employee with the expectation that the employee holds the skills or ability to satisfactorily perform the duties of the job in question, Ms. Rietz does not contend that she and Oracle Corporation entered into the Employment Agreement with reliance on any particular "personal

10

integrity, credit, or responsibility," or that Oracle Corporation sought and recruited her on account of her reputation or singular ability. *Buyers of Ritz-Carlton Vail, LLC v. RCR Vail, LLC*, No. 11–cv–01789–WYD–KLM, 2013 WL 452204, at *3 (D. Colo. Feb. 6, 2013) (relying on *Scott* to find that non-party's assignment of claims to plaintiff was valid).[2] Moreover, there is no provision in the Employment Agreement prohibiting assignment. *Cf. Scott*, 667 P.2d at 774 (relying in part on the absence of such a provision in finding that a real estate option contract was assignable). Because the Employment Agreement is not a contract for personal services, the

---

[2] Also persuasive are several cases, outside of this jurisdiction, that consider the qualities that render a contract one for personal services. *See Scott*, 667 P.2d at 774 (considering cases from other jurisdictions after noting that no Colorado case discusses the application of the exception to options to purchase real estate). The court in *Baker v. Conoco Pipeline* listed examples of contracts involving duties "too personal in character" as those that require "the exercise of knowledge, judgment, or skill, such as: a contract to furnish an abstract of title; a contract to render professional services as a physician, lawyer, or architect; a contract for maintenance and support; and a contract of entrustment of funds or property of another." *Baker v. Conoco Pipeline Co.*, 280 F. Supp. 2d 1285, 1295 (N.D. Okla. 2003) (applying Oklahoma law). *See also Mehul's Inv. Corp. v. ABC Advisors, Inc.,* 130 F. Supp. 2d 700, 705 (D. Md. 2001) (applying Maryland law in distinguishing the contract for printing and copying services from "a typical personal services contract, such as a contract to paint a portrait, write a novel, or perform other work requiring 'rare genius' and 'extraordinary skill.'"); *Board of Trustees of Michigan State University v. Research Corp.*, 898 F. Supp. 519, 522 (W.D. Mich. 1995) (applying Michigan law and noting that personal contracts "are those involving a personal trust in a party or the special skills and knowledge of a particular individual or group of individuals," and that the corporate contract at issue did not qualify as it "does not specify any particular individuals, and is of indefinite duration reflecting that no particular persons were specified as essential to the Contract."); *In re EBC I, Inc.*, 380 B.R. 348, 363 (Bankr. D. Del. 2008) (applying Virginia law and stating, "a contract is not assignable if the identity of the contracting parties is material to the ongoing performance of the contract," explaining "[t]he identity of a party is material to the performance of a contract if the contract is founded on one of the parties maintaining trust or confidence in the ability to perform, judgment, or business experience of the other party"); *Smith v. Cumberland Group, Ltd.*, 455 Pa. Super. 276, 285 n.6 (1997) ("Generally, if mechanical or utilitarian qualities or other criteria readily judged for reasonable completion dominate the contractual duty, then the contract's subject matter is not personal"); 6 Am. Jur. 2d Assignments § 28 (2011) (listing the following types of contracts as involving personal services such that they are not assignable: an agreement to render professional services, such as a physician; an option to purchase stock given to an employee; an agency for the sale of land; a contract for employment as a beauty operator; an exclusive recording contract between a record company and a

assignment of it from Oracle Corporation to Oracle America was valid. *See Buyers of Ritz-Carlton Vail*, 2013 WL 452204, at *3.

      C.      <u>Illusory Contract</u>

Ms. Rietz argues next that even if Oracle America has rights under the Employment Agreement, the arbitration provision constitutes an illusory contract and is not enforceable. [#31 at 6]. Oracle America asserts in its Reply that, to the contrary, unilateral provisions contained in a contract for employment are enforceable. [#39 at 9].

Ms. Rietz is correct that courts within this Circuit have found and held arbitration agreements that allow one party the "unfettered right" to alter the agreement or its scope are illusory. *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir. 2002). However, the Employment Agreement provides that *either* Ms. Rietz or the Senior Vice President of Oracle America may effect changes to it by written agreement signed by both, and that either Ms. Rietz or Oracle America may terminate the employment relationship at any time for any reason. *See* [#25-1 at 2]. Thus, the cases to which Ms. Rietz cites are not analogous. The Employment Agreement is instead more similar to arbitration agreements that courts found were not illusory because the agreements restricted to some degree the defendants' right to modify or change them. *See Lumuenemo v. Citigroup Inc.*, No. 08–cv–00830–WYD–BNB, 2009 WL 371901, at *5 (D. Colo. Feb. 12, 2009) (citing *Hardin v. First Cash Financial Services,* 465 F.3d 470, 478 (10th Cir. 2006)). Unlike in *Gourley v. Yellow Transp.*, LLC, 178 F. Supp. 2d 1196 (2001), which Plaintiff relies on, where the court found that the contract bound one party without binding the other, the Employment Agreement binds Ms. Rietz and Oracle America equally. And, to the extent the Employment Agreement is silent as to Ms. Rietz's right to initiate arbitration, such

---

performing artist; a covenant not to sue) (cited with approval by *Condo v. Conners*, 266 P.3d

silence does not render the contract illusory. *See Rains v. Foundation Health Systems Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001) ("Under Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract."). Ms. Rietz provides a service to Oracle America in return for compensation, as stated in the Employment Agreement. Accordingly, I find that neither the Employment Agreement nor the arbitration provision contained therein are illusory.

### III.     Administrative Closure

Local Rule of Practice 41.2, D.C.COLO.LCivR, allows the administrative closure of cases subject to reopening, as follows:

> A district judge or a magistrate judge exercising consent jurisdiction may order the clerk to close a civil action administratively subject to reopening for good cause. Administrative closure of a civil action terminates any pending motion. Reopening of a civil action does not reinstate any motion.

"Use of the administrative-closure mechanism allows district courts to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending)." *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (quotation marks and citation omitted). For the reasons and findings stated above, this case presents similarly appropriate circumstances justifying administrative closure subject to reopening for good cause under the Local Rule.

### CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1)     The Motion to Compel Arbitration [#25] is **GRANTED**; and

(2)     The deadlines set by the Scheduling Order are **STAYED** until otherwise ordered.

In addition, this court respectfully **RECOMMENDS**:

---

1110, 1119 (Colo. 2011)).

(1) The court **ADMINISTRATIVELY CLOSE** the case pursuant to D.C.COLO.LCivR 41.2, pending completion of arbitration; and

(2) The Parties may move the court to re-open the case after any final order of arbitration upon good cause, including to enforce the arbitral award.[3]

DATED:  March 9, 2017               BY THE COURT:


                                    s/ Nina Y. Wang
                                    United States Magistrate Judge

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).